Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
Fax: (801) 858-0701
Mylar-Law@comcast.net

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MARIA CALZADA, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROY CITY, et al.,<br><br>　　　　Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Case No. 1:16-CV-165-DN<br><br>District Judge David Nuffer |

Defendants, through their attorney Frank D. Mylar, respectfully submit this reply memorandum in support of their motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendants' motion should be granted based upon the pleadings and the following arguments:

**INTRODUCTION**

Plaintiffs have not alleged adequate facts to show Mr. Calzada's Fourth Amendment rights were violated when they searched his home. In searching the home Defendants were responding to an emergency situation where Mr. Calzada was threatening suicide and they had not heard from him for quite some time. Defendants were actively engaged in the situation throughout the

duration of the standoff, and therefore were responding immediately. Defendants are entitled to Qualified Immunity because no court has ever ruled that responding to suicidal person does not constitute exigent circumstances. Additionally, Plaintiffs cannot recover under the Utah constitution because they cannot show a flagrant violation and also an adequate remedy exists under 42 U.S.C. § 1983. As such, Defendants motion should be granted, leaving only Plaintiffs' excessive force claim under the Fourth Amendment.

## REPLY ARGUMENT

**I.     Defendants did respond timely to an emergency situation.**

The crux of Plaintiff's response argument is that even if exigent circumstances did exist, they were lost because Defendants waited too long before deciding to enter Mr. Calzada's home, thereby not responding 'immediately' to the situation.[1] While too long of a period passing can undercut the existence of exigent circumstances in some cases, this is usually just in situations involving the hot pursuit of a suspect[2] and not for a person threatening suicide in his home.

There is a two-fold test to determine whether exigent circumstances exist: "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable."[3] The passage of time, in and of itself, does not make exigent circumstances disappear. For example, the Ninth Circuit Court of Appeals has found that a "one hour delay" did not "preclude[] a finding of exigency," particularly when viewing "the circumstances known to the police prior to the

---

[1] (Doc. No. 31 at 17-21). Please note that all page references are to the page number created by the Court's filing stamp in the header, and not the page numbers internal to the documents.
[2] *See* Steagald v. United States, 451 U.S. 204, 221-22 (1981); G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977); *and* United States v. Wicks, 995 F.2d 964, 980-81 (10th Cir. 1993).
[3] United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006).

warrantless action."[4]  And the Second Circuit Court of Appeals has also said that "even if the agents might have been able to obtain a warrant earlier in the day, their failure to do so at the first opportunity does not bar them from acting on an exigency that arises later."[5]

In this case, upon arriving at the scene, negotiations began immediately with Mr. Calzada.[6] Exigent circumstances to enter the home without a warrant certainly existed the moment Mr. Calzada called the suicide hotline since threatening suicide certainly shows that someone is in need of "immediate assistance."[7]  However, just because the home could be entered right away does not mean the police were obligated to respond in that way.  Rather, in light of Mr. Calzada's drinking and having firearms in his possession, it was reasonably concluded that negotiation would be a better initial tactic.[8]  The hours spent in negotiation with Mr. Calzada was the safest way to render emergency aid to him without endangering the lives of any law enforcement officers.  The exigent circumstances did not dissipate because Defendants attempted to resolve the situation without entering the home as soon as they arrived at the scene.

Further, the hour and a half between losing contact with Mr. Calzada and the entrance into the house does not diminish any of the factors that created the exigency.[9]  Although it was thought that perhaps Mr. Calzada was asleep, he could have just as likely already have harmed himself or he would harm himself as soon as he became conscious again.  The alcohol that he consumed earlier in the evening would have undoubtedly worn off, leaving him hungover, but less likely to

---

[4] *United States v. Lindsey*, 877 F.2d 777, 781-82 (9th Cir. 1989).
[5] *United States v. Gordils*, 982 F.2d 64, 70 (2nd Cir. 1992).
[6] (Compl. ¶ 46, Doc. No. 1 at 17-18).
[7] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).
[8] (Compl. ¶¶ 32-33, Doc. No. 1 at 15).
[9] (Compl. ¶ 57, ¶ 61, Doc. No. 1 at 20-21).

have passed out than he was two hours earlier. Further, Mr. Calzada's commented that "he was going to come outside and face the police officers with his weapons, understanding that he would likely be shot by those police officers,"[10] that he would commit "suicide by cop,"[11] that he not come out without "his guns in his hands,"[12] and that he "was going tactical."[13] These realities did not give them reason to reduce their concern with the passage of a mere hour or two.

Defendants contemplated their options and eventually decided that searching the house was the best course of action to protect Mr. Calzada in case he had already inflicted harm upon himself. They were actively engaged in the situation on the ground the entire time. Defendants should not be punished for being methodical in their choices and waiting for the passage of time before entering the home. The fact that so much time passed before entering the home demonstrates how seriously Defendants attempted to resolve the situation without entering the home. If anything, the longer they went without hearing from Mr. Calzada, the more concern grew that he had harmed himself when contact could not be reestablished. The decision to enter the home was the best choice to make at that time.

It is easy to criticize Defendants' actions from the comfort of an office with perfect hindsight. However, Defendants did not have perfect information on the ground that day. They carefully contemplated their options before deciding to enter the home. Defendants should not incur liability for deciding to enter the home to attempt to render immediate assistance to Mr. Calzada. The decision to search the home did not offend the Fourth Amendment and should therefore be dismissed. Defendants concerns were verified when they finally found him, not

---

[10] (Doc. No. 1-2 at 3).
[11] (Doc. No. 1-1 at 2, 3).
[12] (Doc. No. 1-1 at 3, 5)
[13] (Doc. No. 1-1 at 4).

sleeping, but locked himself inside the trunk of a car in the garage with a pistol in him mouth and an AR-15 assault rifle by his side, pointed at the officers.

Additionally, the case cited by Plaintiffs, *McInerney v. King*, is distinguishable from this matter because even though the defendant police officers waited before entering the residence, exigent circumstances to enter the residence never existed at any point of the fact pattern. Waiting to enter the residence only showed that exigent circumstances never existed. The *McInerney* court summarized its finding of no exigent circumstances by stating "if the nonspecific and dated information from [the plaintiff's doctor] plus a messy house and open doors and windows when the weather is warm could justify the entry that morning, it could have justified an entry on almost any occasion."[14] The timing issue in this case, did not factor into determining whether or not there were exigent circumstances to enter the residence.

## II. The way the search was conducted was reasonable.

To find exigent circumstances, there must be also be a finding that "the manner and scope of the search is reasonable."[15] Defendants made the decision to search the home solely to locate Mr. Calzada so they could get him to safety and prevent him from killing himself in some manner. There are no allegations that Defendants were looking for contraband or ever exceeded the scope of a search strictly meant to locate Mr. Calzada. The search was conducted by several persons in a manner to protect their safety,[16] which is certainly reasonable considering Mr. Calzada was intoxicated and had firearms in possession[17] and kept threatening to "go tactical."[18] Officer Miles

---

[14] *McInerney v. King*, 791 F.3d 1224, 1235 (10th Cir. 2015).
[15] *Najar*, 451 F.3d at 718.
[16] (Compl. ¶ 68, Doc. No. 1 at 23).
[17] (Compl. ¶¶ 32-33, Doc. No. 1 at 15).
[18] (Doc. No. 1-1 at 4).

5

loaded less-lethal super sock shells in his shotgun, and Officer Perez called out multiple times when they entered the house,[19] demonstrating their concern for Mr. Calzada's safety. While much of the house was searched, this was only because Mr. Calzada could not be located. A K9 (dog) unit was even called because he could not be located.[20] It took over a half-hour of searching to locate Mr. Calzada, and there are no allegations that the search continued after he was located.[21] As such, the manner and scope of the search was reasonable, limited, and did not violate the Fourth Amendment.

### III. Defendants are still entitled to Qualified Immunity.

Even if Plaintiffs have adequately alleged that Defendants are liable for an illegal search, Defendants would still be shielded from suit by Qualified Immunity. A defendant who raises an affirmative defense of Qualified Immunity effectively shifts the burden to the plaintiff as a matter of law to show that (1) the defendant's actions violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's conduct.[22] Regarding the first prong, as stated in Defendants' original motion and points I and II above, Plaintiffs cannot show that Defendants violated the Fourth Amendment in the search of Mr. Calzada's home.

Regarding the second prong, there are multiple cases that demonstrate that Defendants' actions were not contrary to any clearly established law. If the law is simply unclear, Defendants are entitled to Qualified Immunity. For example, in *Ewolski v. City of Brunswick*, the Sixth Circuit Court of Appeals found that officers were entitled to Qualified Immunity even after a fatal two-

---

[19] (Doc. No. 1-2 at 3).
[20] (Compl. ¶ 74, Doc. No. 1 at 24-25).
[21] (Compl. ¶¶ 75-78, Doc. No. 1 at 25).
[22] *Anderson v. Creighton*, 483 U.S. 635 (1987); *Romero v. Board of C'nty Comm'rs*, 60 F.3d 702 (10th Cir. 1995).

day standoff with a person holding his family hostage.[23]  Admittedly, *Ewolski* is a different fact pattern since Mr. Calzada did not have any hostages, but it at least demonstrates that a long standoff can occur and exigent circumstances do not automatically disappear.  Plaintiffs have failed to cite any cases where police were trying to prevent the suicide of a person with firearms in his home.

Further, there are even stronger cases that demonstrate the Defendants' actions were not contrary to any clearly established law.  In *Russo v. City of Cincinnati*, the Sixth Circuit commented that it was not aware of "a single case indicating that an officer's attempt to rescue what the officer believes to be a suicidal person does not constitute exigent circumstances."[24]

In *Rockwell v. Brown*, the Fifth Circuit Court of Appeals offered its view of the state of the law in 2011 as it relates to suicidal persons and exigent circumstances when it noted:  "Only a handful of courts of appeals and district courts have addressed whether the threat a suspect poses to himself may constitute an exigent circumstance; each of these courts concluded either (i) that the threat the suspect posed to himself *did* constitute an exigent circumstance or (ii) that the issue was not clearly established."[25]  As a result it held that it "was not clearly established that it was unreasonable for the officers to believe that the threat [the decedent] posed to himself constituted an exigent circumstance."[26]

Plaintiffs have not cited to any cases involving the threat of suicide from any court.  More importantly, Plaintiffs have not pointed to any precedent that demonstrates a person threatening suicide does not qualify as an exigent circumstance, and therefore Defendants are shielded by Qualified Immunity for their search of the home.

---

[23] *Ewolski v. City of Brunswick*, 287 F.3d 492, 502-505 (6th Cir. 2002).
[24] *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992).
[25] *Rockwell v. Brown*, 664 F.3d 985, 995 (5th Cir. 2011).
[26] *Id.* at 996.

7

**IV.     Plaintiffs cannot recover under Utah state law.**

Plaintiffs still cannot meet the *Spackman* requirements to recover damages under the Utah Constitution.  Plaintiffs have already conceded their claims alleged under Article I, Sections 6 and 25 of the Utah Constitution,[27] leaving only their claims alleged under Article I, Sections 1, 7, and 14.  However, Plaintiffs' response does not address their Section 1 and 7 claims as it relates to the *Spackman* requirements and so these two claims should also be dismissed.[28]  Finally, their response related to Section 14 only addresses the search of Mr. Calzada's home, and so to the extent that their Section 14 claim relates to the shooting of Mr. Calzada, it should be dismissed as well.[29]  Additionally, Plaintiffs' agree that their Fifth Cause of Action under Utah common law for willful misconduct/wrongful death is prohibited by the Utah Governmental Immunity Act, and so it should also be dismissed with prejudice.[30]

As has been discussed, to recover monetary damages under the Utah Constitution, (1) a plaintiff must establish that he or she suffered a flagrant violation of constitutional rights; (2) existing remedies do not redress his or her injuries; and (3) that equitable relief, such as an injunction, was and is wholly inadequate to protect plaintiff's rights or redress his or her injuries.[31]  Plaintiffs cannot satisfy these requirements.

---

[27] (Doc. No. 31 at 15).
[28] (Doc. No. 31 at 16-20).
[29] (Doc. No. 31 at 16-20).
[30] (Doc. No. 31 at 20).
[31] *See Spackman v. Bd. of Educ. of the Box Elder Cty. Sch. Dist.*, 16 P.3d 533 (Utah 2000).

### A.     There was not a flagrant violation of Decedent's Utah Constitutional rights.

To be a flagrant violation "means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known.'"[32]  This ensures "a government employee is allowed the ordinary 'human frailties of forgetfulness, distractibility, or misjudgment without rendering [him or her]self liable for a constitutional violation.'"[33]

The burden rests upon Plaintiffs to show some clearly established law that Defendants violated.  The County is not required to try and shoot down every conceivable theory of liability against it.  Defendants knows of no court decision that describes constitutional misconduct from their actions in searching the house and, for this reason, Decedent did not suffer a flagrant violation of his Utah Constitutional rights.  Indeed, the fact that only few other courts have addressed whether helping a suicidal person constitutes exigent circumstances and none of them have imposed liability on officers in these situations[34] further shows that any violation was not flagrant.  Even if there are situations where a flagrant violation can occur without any existing precedent, that is not this case.  "[I]n the absence of relevant precedent recognizing the [constitutional] right and prohibiting the alleged conduct, it will be more difficult for a plaintiff to prevail."[35]  Plaintiffs have not shown any precedent prohibiting Defendants' conduct, and so any alleged Utah Constitutional violation Decedent may have suffered was not flagrant.

---

[32] *Spackman*, 16 P.3d at 538 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[33] *Spackman*, 16 P.3d at 538 (*quoting Bott v. DeLand*, 922 P.2d 732, 739-40 (Utah 1996)).
[34] *Rockwell*, 664 F.3d at 995.
[35] *Jensen v. Cunningham*, 250 P.3d 465, 482 (Utah 2011).

### B. 42 U.S.C. § 1983 is an existing remedy for any alleged injury Decedent suffered.

"[A] plaintiff must establish that existing remedies do not redress his or her injuries."[36] Plaintiffs claim that Article I, Section 14 of the Utah Constitution protects more than the Fourth Amendment of the federal Constitution, however they do not explain this beyond a general level.[37] That is, there is no discussion of what might constitute a violation of Section 14, but not the Fourth Amendment. This is because even though Section 14 provides greater privacy than the Fourth Amendment, there is no case law that teases out how this difference actually functions.

The protection offered by Section 14 is at most only marginally more than the substantial safeguards already built into the Fourth Amendment. So, in the event that a scenario somehow does violate Section 14, but does not offend the Fourth Amendment, it would be difficult to show such a violation is 'flagrant' anyway. This matter is not the rare instance where the Utah Constitution is violated but the federal Constitution is not. Instead Plaintiffs are treating Section 14 as a backup provision if their Fourth Amendment claims fail.

Finally, all of the cases offered by Defendants in their opening motion expressly dealt with Article I, Section 14 of the Utah Constitution.[38] Plaintiffs state that the Court should ignore them because they did not discuss that Section 14 provides greater protections than the Fourth Amendment.[39] However, this is a general statement without any workable method to apply. Rather, since this Court has found 42 U.S.C. § 1983 adequately redresses Utah Constitutional

---

[36] *Spackman*, 16 P.3d at 538.
[37] (Doc. No. 31 at 16-17).
[38] *Nielson v. City of S. Salt Lake*, 2009 U.S. Dist. LEXIS 98372, 2009 WL 3562081 (D. Utah 2009); *Cavanaugh v. Woods Cross City*, 2009 U.S. Dist. LEXIS 116214, 2009 WL 4981591 (D. Utah 2009); and *Hoggan v. Wasatch County*, 2011 U.S. Dist. LEXIS 83068, 2011 WL 3240510 (D. Utah 2011).
[39] (Doc. No. 31 at 18-19).

claims in the past, including Article I, Section 14 claims, it should find that it does so in this matter as well.  As such, existing remedies adequately address any injuries suffered by Decedent, and all Plaintiffs' Utah Constitutional claims should be dismissed.

**WHEREFORE:**  The Court should grant Defendants' Motion for Partial Judgment on the Pleadings and Plaintiffs should be ordered to pay Defendants' attorney fees and costs under 42 U.S.C. § 1988.

Dated this 9th day of May, 2017.

/s/ *Frank D. Mylar*

Frank D. Mylar
Attorney for Defendants